**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| Dung T. N., | ) | NO. SA CV 20-975-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | **AND ORDER OF REMAND** |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on May 27, 2020, seeking review of the Commissioner's denial of benefits. On June 18, 2020, the parties consented to proceed before a United States Magistrate Judge. Plaintiff filed a motion for summary judgment on January 28, 2021.

Defendant filed a motion for summary judgment on April 7, 2021.  The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed May 28, 2020.

**BACKGROUND**

Plaintiff seeks disability insurance benefits beginning May 17, 2015, based on allegations of back, arm and wrist pain, heart disease, chronic chest pain, diabetes, major depressive disorder, anxiety disorder and insomnia (Administrative Record ("A.R.") 231-32, 254-55, 266, 308).  Plaintiff's last insured date was December 31, 2018 (A.R. 250).

An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 15-27, 75-108).[1]  The ALJ found that Plaintiff has severe coronary artery disease, status post coronary artery bypass graft in 2007, and severe degenerative disc disease of the lumbar spine and cervical spine (A.R. 18).  The ALJ found "nonsevere" Plaintiff's carpal tunnel syndrome (A.R. 18-19).  The ALJ found that Plaintiff retains the residual functional capacity to perform medium work with occasional climbing of ramps/stairs and ladders/ropes/scaffolds, and occasional balancing,

---

[1]    Plaintiff had filed a previous application for benefits, which was denied for a time period ending May 16, 2015 – the day before Plaintiff's alleged onset date in the present case.  See A.R. 112-21 (prior ALJ's adverse decision), 126-29 (Appeals Council's prior denial of review).  Although the present ALJ found no changed circumstances, the ALJ proceeded through the sequential analysis anew based on the updated record (A.R. 16-27).

1  stooping, kneeling, crouching and crawling.  <u>See</u> A.R. 22-26 (giving

2  significant weight to the non-examining state agency physicians'

3  opinions, partial weight to a consultative examiner's opinion, partial

4  weight to a qualified medical examiner's opinion, and little or no

5  weight to the treating medical opinions).  In finding this capacity,

6  the ALJ discounted Plaintiff's testimony and statements regarding his

7  subjective symptomatology as "not entirely consistent with the medical

8  evidence and other evidence in the record" (A.R. 23).

9

10      The ALJ found Plaintiff capable of performing his asserted past

11  relevant work as a soils engineer (Dictionary of Occupational Titles

12  ("DOT") 024.161-010) as generally performed (A.R. 27 (adopting

13  vocational expert's testimony at A.R. 94-107)).  Accordingly, the ALJ

14  denied benefits (A.R. 27).  The Appeals Council denied review

15  (A.R. 1-3).

16

17                              **STANDARD OF REVIEW**

18

19      Under 42 U.S.C. section 405(g), this Court reviews the

20  Administration's decision to determine if: (1) the Administration's

21  findings are supported by substantial evidence; and (2) the

22  Administration used correct legal standards.  <u>See</u> <u>Carmickle v.</u>

23  <u>Commissioner</u>, 533 F.3d 1155, 1159 (9th Cir. 2008); <u>Hoopai v. Astrue</u>,

24  499 F.3d 1071, 1074 (9th Cir. 2007); <u>see also</u> <u>Brewes v. Commissioner</u>,

25  682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such

26  relevant evidence as a reasonable mind might accept as adequate to

27  support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401

28  (1971) (citation and quotations omitted); <u>see</u> <u>Widmark v. Barnhart</u>, 454

1 | F.3d 1063, 1067 (9th Cir. 2006).

2

3 | If the evidence can support either outcome, the court may
4 | not substitute its judgment for that of the ALJ.  But the
5 | Commissioner's decision cannot be affirmed simply by
6 | isolating a specific quantum of supporting evidence.
7 | Rather, a court must consider the record as a whole,
8 | weighing both evidence that supports and evidence that
9 | detracts from the [administrative] conclusion.

10

11 | Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and
12 | quotations omitted).

13

14 | **DISCUSSION**

15

16 | Plaintiff contends, _inter alia_, that the ALJ erred in the
17 | evaluation of Plaintiff's testimony and statements regarding
18 | Plaintiff's subjective symptoms and claimed limitations.  For the
19 | reasons discussed below, the Court agrees.

20

21 | **I.   Summary of the Medical Record**

22

23 | The medical record consists mostly of reports related to
24 | Plaintiff's workers' compensation claim(s) and several actual
25 | treatment notes.  Workers' compensation physician Dr. Gary P. Jacobs
26 | prepared two Internal Medicine Evaluation Reports dated April 29, 2015
27 | (A.R. 385-89).  Plaintiff had complained of pain in his low back, arm,
28 | chest and wrist, heartburn, gastrointestinal issues, headaches,

depression, anxiety, insomnia, difficulty with ramps, stairs, and
rising from a seated position, difficulty with above-the-shoulder
activities and numbness and tingling in his extremities (A.R. 385,
387).  Dr. Jacobs diagnosed chest pain and hypertension, and Dr.
Jacobs deferred any orthopedic diagnosis, and any work status
evaluation, to Plaintiff's primary treating physician (A.R. 386, 388).

Qualified Medical Examiner ("QME") Dr. Norman Nakata reviewed
medical records and prepared a summary and an evaluation dated
June 13, 2015 (A.R. 390-402).  Plaintiff had complained of stiffness
and pain in his cervical spine and lower back, headaches, weakness in
both hands, numbness and decreased feeling in his fingers, an
inability to sit longer than 30 minutes at a time, stand longer than
five minutes at a time, walk longer than 30 minutes at a time, and
lift 10 or more pounds (A.R. 396).  Plaintiff had high blood pressure,
atherosclerotic heart disease and had undergone cardiac surgery (A.R.
396).  On examination, Plaintiff had tenderness along his sternal
incision scar and in his cervical spine and shoulders, strength of 4/5
in the left hand and 5/5 in the right hand, positive carpal tunnel
signs and decreased sensation in the hands (A.R. 397-99).  Dr. Nakata
diagnosed cervical and lumbar strain, degenerative disease of the
cervical and lumbar spine, overuse syndrome and tendinitis in both
hands and wrists, and bilateral carpal tunnel syndrome (left greater
than right) (A.R. 400).  Dr. Nakata recommended an EMG/nerve
conduction study of Plaintiff's bilateral upper extremities (A.R. 400,
403).  Dr. Nakata prepared a supplemental report dated October 28,
2015, opining that Plaintiff is precluded from heavy work and from
repetitive bending and stooping (A.R. 584-91).

1    Workers' compensation physician Dr. Nimish Shah reviewed the

2    record and prepared a Primary Treating Physician's Narrative

3    Reevaluation Report dated June 17, 2015 (A.R. 410-32).  Plaintiff had

4    complained of neck pain radiating to the upper extremities with

5    tingling, numbness, weakness, cramps and burning, bilateral wrist and

6    hand pain, constant low back pain radiating to the lower extremities

7    with tingling, numbness and pain, and sternal pain related to lifting

8    (A.R. 410-11).  On examination, Plaintiff had slow, guarded gait,

9    tenderness in the cervical spine, tenderness in the low back, positive

10   straight leg raising, inability to walk on toes and heels, positive

11   carpal tunnel compression testing with positive Tinel's sign and

12   Phalen's test, tenderness to the chest scar, grip strength of 20

13   pounds or less, hypoalgesia at C6-C7 and L5-S1, and mild weakness in

14   the upper and lower extremities (A.R. 419-21).  Dr. Shah diagnosed:

15   (1) possible cervical and lumbar sprain/strain with discogenic and

16   facet pain at C2-C3, C5-C6, L4-L5 and L5-S1; (2) possible bilateral

17   carpal tunnel syndrome versus bilateral upper extremity pain related

18   to cervical radiculopathy versus "double crush syndrome";

19   (3) bilateral lumbosacral radicular pain; (4) keloid formation on the

20   chest surgery scar with tenderness; and (5) stress syndrome (anxiety,

21   depression, insomnia) (A.R. 422).  Dr. Shaw extended Plaintiff's

22   temporary total disability through October 31, 2015 (A.R. 429, 457,

23   484, 515).

24

25   Psychologist/QME Dr. Nelson J. Flores prepared a Comprehensive

26   Permanent and Stationary Psychological Evaluation Report/Medical

27   Records Review dated September 24, 2015 (A.R. 522-73).  Dr. Flores

28   diagnosed major depressive disorder (single episode, mild),

generalized anxiety disorder, male hypoactive sexual desire disorder

due to chronic pain, insomnia, stress-related physiological response

affecting gastric disturbances, high blood pressure and headaches,

which Plaintiff developed subsequent to work "overload," stress and

harassment in the workplace and chronic pain from work injuries (A.R.

525).  On mental status examination, Plaintiff was cooperative,

although sad, anxious, apprehensive, tense and preoccupied with

physical symptoms and financial circumstances (A.R. 539-40).

Plaintiff's concentration was sometimes deficient (A.R. 540).  Dr.

Flores assessed a Global Assessment of Functioning ("GAF") score of 58

(A.R. 544).[2]  Dr. Flores opined that Plaintiff should not be placed in

any work position where he could be at risk for industrial accident if

he becomes anxious and/or distracted, and Plaintiff should not work in

a position where he is required to handle stress and/or conflicts on a

regular basis while interacting with the public and/or coworkers (A.R.

552).

    Dr. Nhan Nguyen treated Plaintiff with medications for

hypertension, diabetes and hyperlipidemia from October of 2014 through

August of 2015 (A.R. 332-33).  Dr. Nguyen's treatment records are not

detailed.

///

---

    [2]    The GAF scale is used by clinicians to report an
individual's overall level of functioning.  See American
Psychological Association, Diagnostic and Statistical Manual of
Mental Disorders 34 (4th ed. 2000).  A GAF of 51-60 indicates
"[m]oderate symptoms (e.g., flat affect and circumstantial
speech, occasional panic attacks) or moderate difficulty in
social, occupational, or school functioning (e.g., temporarily
falling behind in schoolwork)."  Id.

1    Dr. Tuan Nguyen treated Plaintiff periodically from November of
2    2015 through at least January of 2019, with medications for diabetes,
3    coronary artery disease, exertional chest pain, shortness of breath
4    and hypertension (A.R. 361-64, 620-79).  In May of 2017, Plaintiff
5    reportedly was "clinically stable" (A.R. 636).  By October of 2017,
6    Plaintiff reported that he was doing well, with no active complaints
7    or cardiac symptoms (A.R. 629).  In April of 2018, Plaintiff reported
8    that he could walk daily without chest pain, shortness of breath or
9    dyspnea on exertion (A.R. 633).  In August of 2018, Plaintiff
10   reportedly was able to complete basic activities of daily living
11   without cardiopulmonary exertional symptoms (A.R. 643).  In January of
12   2019, however, Dr. Nguyen treated Plaintiff for shortness of breath
13   (A.R. 361-64, 676-79).  Plaintiff then complained of a history of
14   asthma with worsening "SOB" (shortness of breath), "DOE" (dyspnea on
15   exertion), and worsening bilateral hand tremor right more than left
16   (A.R. 361).  An EKG reportedly was normal, and Plaintiff was referred
17   for an echocardiogram and to neurology for a Parkinson's Disease
18   evaluation (A.R. 363-64).

19

20   Dr. Tuan Nguyen completed a Cardiac Residual Functional Capacity
21   Questionnaire dated January 31, 2019 (A.R. 365-69).  Dr. Nguyen
22   diagnosed "CAD" (coronary artery disease) and "CHF" (congestive heart
23   failure) with "NYHA Class 3" (New York Heart Association
24   Classification), based on echo testing and Plaintiff's history of
25   heart surgery (A.R. 365).  Dr. Nguyen reported that Plaintiff has
26   "substantial" chest pain exacerbated with exertion (A.R. 365).  Dr.
27   Nguyen indicated that Plaintiff has marked limitations of physical
28   activity, is capable of a low stress job, but frequently would have

1  symptoms severe enough to interfere with his attention and

2  concentration (A.R. 365-66).

3

4      Dr. Tuan Nguyen also completed a Pulmonary Residual Functional

5  Capacity Questionnaire dated July 31, 2019 (A.R. 371-75).  Dr. Nguyen

6  diagnosed asthma with shortness of breath, chest tightness, rhonchi,

7  episodic acute asthma and fatigue, with asthma attacks three times a

8  year for 1-3 days precipitated by upper respiratory infection,

9  allergens, exercise, irritants and cold air/change in weather (A.R.

10 371-72).  Dr. Nguyen again indicated that Plaintiff's symptoms would

11 frequently interfere with his attention and concentration, but

12 Plaintiff would be capable of low stress jobs (A.R. 372).

13

14     In both residual functional capacity questionnaires, Dr. Nguyen

15 opined that, since November of 2016, Plaintiff: (1) could lift less

16 than 10 pounds; (2) could walk less than one block without rest or

17 severe pain; (3) could sit and stand/walk for less than two hours each

18 in an eight-hour workday; (4) could frequently twist, stoop,

19 crouch/squat, climb ladders and stairs; (5) would need to shift

20 positions at will from sitting, standing or walking; (6) would need to

21 take unscheduled breaks to lie down every two hours for 15 minutes;

22 and (7) would need to avoid all exposure to cigarettes, soldering

23 fluxes, solvents, cleaners, fumes, odors, gases, dust and chemicals

24 (A.R. 367-69, 373-75).

25

26     Dr. Vuong Nguyen and Physician's Assistant ("PA") Hong An Pham

27 treated Plaintiff with medications for diabetes, hypertension,

28 hyperlipidemia, coronary artery disease, exertional chest pain,

shortness of breath, and dyspnea on exertion from August of 2018
through at least January of 2019 (A.R. 660-79).  Plaintiff's
medications included Flovent, Albuterol, Pseudoephedrine, Flonase,
Zyrtec, Vascepa, Metformin, Lisonopril, Atorvastatin, Isosorbide
mononitrate and Metroprolol (A.R. 664).  In January of 2019, Plaintiff
complained of fatigue, muscle weakness and chest pain on exertion and
with heavy lifting (A.R. 664).  Plaintiff returned later in January
with disability forms to be completed, at which time his physical
examination findings reportedly were within normal limits (A.R. 666).

    PA Pham completed a Physical Residual Functional Capacity
Questionnaire dated February 7, 2019 (A.R. 377-83).  PA Pham
reportedly had treated Plaintiff every three months and as needed for
"CAD" (coronary artery disease), "SOB" (shortness of breath) on
exertion, insomnia, back pain with radiculopathy, diabetes,
hypertension, hyperlipidemia, fatigue, weakness and chest pain, for
which Plaintiff has a guarded prognosis (A.R. 377-78).  Plaintiff
reportedly had generalized weakness and fatigue and therefore could
not walk or stand for long periods of time or lift more than 10 pounds
(A.R. 377).  PA Pham reported that Plaintiff has limited range of
motion, muscle spasm, reflex changes, muscle weakness, impaired sleep,
grip strength of less than 10 pounds, depression and anxiety (A.R.
378-79).  PA Pham opined that Plaintiff's symptoms frequently would
interfere with his attention and concentration (A.R. 379).  PA Pham
opined that Plaintiff: (1) could rarely lift less than 10 pounds;
(2) could sit for 10 minutes at a time and stand for five minutes at a
time; (3) could sit and stand/walk less than two hours each per day;
(4) would need to walk every 10 minutes; (5) must be able to shift

positions at will from sitting, standing and walking; (6) must take
unscheduled breaks every two hours for 30 minutes; (7) must elevate
his legs at all times; (8) must use a cane or other assistive device
when standing/walking; (9) could rarely look down or up, or turn his
head right or left or hold his head in a static position; (10) could
rarely twist, stoop, crouch/squat or climb stairs and could never
climb ladders; (11) could occasionally use his hands for reaching,
handling, fingering, etc., and could occasionally use his feet (A.R.
380-83).  PA Pham opined that Plaintiff would miss more than four days
of work per month (A.R. 383).

        Meanwhile, consultative examiner Dr. Ernest A. Bagner, III, a
psychiatrist, prepared a Complete Psychiatric Evaluation dated
February 15, 2017 (A.R. 336-39).  Dr. Bagner did not review any
medical records (A.R. 337).  Plaintiff reported a history of
depression, anger, anxiety, tiredness and weakness, trouble
concentrating, memory problems, heart problems status post heart
attack with open heart surgery, diabetes, high blood pressure and
arthritis (A.R. 336).  Plaintiff reported that he walks around,
watches television, makes very simple meals and can dress and bathe
independently (A.R. 337-38).  On mental status examination, Plaintiff
was cooperative, although he appeared angry, had rapid speech, could
not recall any of three objects in five minutes, and could not spell
"world" (A.R. 338-39).  Dr. Bagner diagnosed a mood disorder (not
otherwise specified), and assigned a GAF of 60 with a fair prognosis
(A.R. 339).  Dr. Bagner opined that Plaintiff would have moderate
limits in following detailed instructions, interacting appropriately
with coworkers, supervisors and the public, and responding to work

11

pressures, and he would have mild limits in his daily activities and
in his ability to follow simple instructions, comply with job rules
such as safety rules and attendance rules and respond to changes in
the work setting (A.R. 339).

Consultative examiner Dr. Jay Dhiman prepared an Internal
Medicine Evaluation dated March 22, 2017 (A.R. 342-47).  It is not
clear whether Dr. Dhiman reviewed any medical records as part of his
evaluation.  Plaintiff reportedly complained of radiating low back
pain since 2013 from heavy lifting at work, a history of open heart
surgery in 2007, and diabetes since 2004 (A.R. 342-43).  Plaintiff
denied exertional chest pain and said he has occasional chest pain
with bending and movement (A.R. 343).  On examination, Plaintiff had a
grip strength of 10 pounds on the right and five pounds on the left,
tenderness in the lower lumbar spine at midline with limited range of
motion, tenderness of the costochondral joints bilaterally, and
otherwise normal findings (A.R. 343-46; see also A.R. 349 (lumbar
spine x-ray which showed evidence of moderate hypertrophic changes in
the lumbar spine with decrease in the L4-L5 disc level)).  Dr. Dhiman
observed that Plaintiff had a history of myocardial infarction status
post surgery (erroneously referenced as "status post cabbage"), a
history of diabetes, and tenderness on examination (A.R. 346).  Dr.
Dhiman did not make any diagnosis (A.R. 346). Dr. Dhiman opined that
Plaintiff would be capable of medium work with no sitting limits or
reaching/manipulation limits, but with no more than frequent bending,
crouching and stooping (A.R. 346).

///

///

State agency physicians reviewed the medical record in April and August of 2017 (A.R. 130-55).  These physicians opined that, although Plaintiff suffered from severe degenerative disc disease, he is capable of medium work with occasional postural limits (A.R. 130-55 (assertedly giving great weight to the consultative examiners' opinions)).[3]

## II.   The ALJ Materially Erred in the Evaluation of Plaintiff's Testimony and Statements Regarding Plaintiff's Subjective Symptomatology and Claimed Limitations.

Plaintiff testified that he stopped working as a soil tester because he no longer has sufficient lifting strength and because he has heart problems, chest pain, asthma and "COPD" (chronic obstructive pulmonary disease) (A.R. 81-85).  More specifically, Plaintiff stated that he has: (1) chest pain that worsens when he lifts heavy objects,

---

[3]      As noted above, in determining Plaintiff's residual functional capacity, the ALJ gave: (1) "significant" weight to the state agency physicians' opinions finding Plaintiff capable of medium work (A.R. 25); (2) "partial" weight to Dr. Dhiman's opinion finding Plaintiff capable of medium work limited to no more than frequent bending, crouching and stooping (A.R. 25); (3) "partial" weight to QME Nakata's opinion that Plaintiff is precluded from heavy work and repetitive bending and stooping (A.R. 26); (4) "little" weight to Dr. Tuan Nguyen's opinion finding Plaintiff capable of "less than sedentary work" as assertedly not consistent with the evidence as a whole (A.R. 26); (5) "little" weight to PA Pham's opinion finding Plaintiff capable of "less than sedentary work" as assertedly not consistent with the evidence and because a physician's assistant is not an acceptable medical source (A.R. 26); (6) "little" weight to Dr. Bagner's consultative examiner opinion that Plaintiff has mental limitations (A.R. 20-21); and (7) no weight to Dr. Flores' opinion that Plaintiff has mental limitations (A.R. 21).

climbs stairs or walks too far; (2) neck pain which keeps him from
looking up too long; (3) nerve damage in his arm that prevents him
from writing a whole page; (4) some problems holding onto objects and
using his hands; and (5) back pain which limits sitting to 20 minutes,
standing to ten minutes and walking to two or three blocks (A.R. 86-
87, 91-92).  Plaintiff also testified that he suffers from depression,
which limits his socializing and concentration and which also
manifests in problems such as losing his way home and being unable to
follow a story when reading or watching television (A.R. 88-90).

In a Function Report - Adult form dated January 30, 2017,
Plaintiff reported that he had chronic pain preventing him from
lifting over 10 pounds, standing more than 10 minutes, or walking more
than 1/10 of a mile without rest, and that his condition prevented him
from paying attention for more than two minutes (A.R. 266-74).
Plaintiff reported that he spent his days walking "a little," lying
down, making sandwiches or frozen dinners and doing laundry (for "4-5
min.") (A.R. 267-69).  Plaintiff reported he had no problems with his
own personal care, but indicated he almost never went outside, other
than for groceries (A.R. 267, 269).

The ALJ discounted Plaintiff's testimony and statements as
assertedly "not entirely consistent with the medical evidence and
other evidence in the record" (A.R. 23).  The ALJ stated that
Plaintiff's assertions were "inconsistent with the evidence as a
whole," which reportedly showed an "unremarkable" physical
examination, normal heart and lung functioning and no evidence of
neurological deficits, shortness of breath, or any need for an

assistive device to ambulate (A.R. 23-26).  The ALJ also observed that
Plaintiff has been treated with pain medications, which reportedly had
given Plaintiff "some improvement," that Plaintiff's heart condition
assertedly was "stable," and it "appear[ed]" that Plaintiff's
degenerative disc disease and coronary artery disease were "generally"
"stable with medication" (A.R. 24-25).

     Elsewhere in the ALJ's written decision, the ALJ stated:
(1) there assertedly was no evidence Plaintiff had decreased ability
to use his hands and Plaintiff reportedly was able to prepare simple
meals, do laundry, and manage his personal care without assistance
(A.R. 19 (citing A.R. 267 (Function Report - Adult form)); and
(2) there assertedly was no evidence that Plaintiff continued to seek
mental health treatment after his workers' compensation case was
resolved (A.R. 20).  Thus, construing the ALJ's decision liberally, it
appears that the ALJ discounted Plaintiff's subjective testimony and
statements based on Plaintiff's admitted daily activities, Plaintiff's
failure to seek mental health treatment after his workers'
compensation case resolved, and asserted inconsistencies between
Plaintiff's subjective complaints and the medical record, including
the medical treatment record.

     Where, as here, an ALJ finds that a claimant's medically
determinable impairments reasonably could be expected to cause some
degree of the alleged symptoms of which the claimant subjectively
complains (A.R. 23), any discounting of the claimant's complaints must
be supported by "specific, cogent" findings.  See Berry v. Astrue, 622
F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834

(9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must state "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of malingering).[4]  Generalized, conclusory findings do not suffice.  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen v. Chater, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also Social Security Ruling ("SSR")

///

///

///

---

[4]     In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Leon v. Berryhill, 880 F.3d 1041, 1046 (9th Cir. 2017); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014); Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases).  In Ahearn v. Saul, 988 F.3d 1111, 1116 (9th Cir. 2021), the Ninth Circuit appeared to apply both the "specific, cogent" standard and the "clear and convincing" standard.  In the present case, the ALJ's findings are insufficient under either standard, so the distinction between the two standards (if any) is academic.

1  96-7p (explaining how to assess a claimant's credibility), <u>superseded</u>,

2  SSR 16-3p (eff. March 28, 2016).[5]

3

4      The ALJ's stated reasons for discounting Plaintiff's subjective

5  testimony and statements are legally insufficient.  Turning first to

6  Plaintiff's daily activities, inconsistencies between admitted daily

7  activities and claimed incapacity properly may impugn the accuracy of

8  a claimant's testimony and statements under certain circumstances.

9  <u>See, e.g.</u>, <u>Thune v. Astrue</u>, 499 Fed. App'x 701, 703 (9th Cir. 2012)

10  (ALJ properly discredited pain allegations as contradicting claimant's

11  testimony that she gardened, cleaned, cooked, and ran errands);

12  <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1175 (9th Cir. 2008)

13  (claimant's "normal activities of daily living, including cooking,

14  house cleaning, doing laundry, and helping her husband in managing

15  finances" provided sufficient explanation for discounting claimant's

16  testimony). Yet, it is difficult to reconcile Ninth Circuit opinions

17  discussing when a claimant's admitted activities may and may not

18  justify a discounting of the claimant's testimony and statements.

19  Compare <u>Stubbs-Danielson v. Astrue</u> <u>with</u> <u>Vertigan v. Halter</u>, 260 F.3d

20  1044, 1049-50 (9th Cir. 2001) ("the mere fact that a plaintiff has

21  carried on certain daily activities, such as grocery shopping, driving

22  _____

23      [5]  Social Security Rulings ("SSRs") are binding on the
Administration.  <u>See</u> <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 n.1

24  (9th Cir. 1990).  The appropriate analysis under the superseding
SSR is substantially the same as the analysis under the

25  superseded SSR.  <u>See</u> <u>R.P. v. Colvin</u>, 2016 WL 7042259, at *9 n.7

26  (E.D. Cal. Dec. 5, 2016) (stating that SSR 16-3p "implemented a
change in diction rather than substance") (citations omitted);

27  <u>see also</u> <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 n.5 (9th Cir.
2017) (suggesting that SSR 16-3p "makes clear what our precedent

28  already required").

a car, or limited walking for exercise, does not in any way detract
from her credibility as to her overall disability"); see also Diedrich
v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017) (daily activities
of cooking, cleaning, vacuuming, washing dishes, shopping and cleaning
a cat's litter box insufficient to discount the claimant's subjective
complaints).

     In the present case, Plaintiff's limited admitted daily
activities do not significantly undermine his subjective complaints.
Although Plaintiff reported no difficulty with personal care and
indicated that he could make sandwiches or frozen meals and do laundry
for a few minutes at a time, none of these activities necessarily
contradict Plaintiff's claimed inability to function as required in a
work setting, including a claimed inability to use his hands
sufficiently to work at a job.  Thus, Plaintiff's limited admitted
daily activities do not furnish a legally sufficient reason to
discount his subjective complaints.  See Revels v. Berryhill, 874 F.3d
648, 667-68 (9th Cir. 2017).

     With respect to Plaintiff's asserted failure to seek mental
health treatment after his workers' compensation case resolved, an ALJ
sometimes may discount a claimant's allegations based on a claimant's
failure to seek treatment or follow a prescribed course of treatment.
See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (in
assessing claimant's credibility, ALJ may properly rely on
"unexplained or inadequately explained failure to seek treatment or to
follow prescribed course of treatment").  However, "it is a
questionable practice to chastise one with a mental impairment for the

1  exercise of poor judgment in seeking rehabilitation." <u>Nguyen v.</u>

2  <u>Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).  In

3  this case, there is no suggestion that Plaintiff failed to follow

4  mental health treatment recommendations when treatment was available.

5  On this record, Plaintiff's asserted failure to seek mental health

6  treatment after his workers' compensation case resolved is not a

7  legally sufficient reason to reject Plaintiff's testimony that his

8  depression causes him to have significant issues with concentration.

9

10      With respect to perceived inconsistencies between Plaintiff's

11 subjective complaints and the objective medical record, such perceived

12 inconsistencies are not in themselves legally sufficient reasons for

13 discounting Plaintiff's testimony and statements.  An asserted lack of

14 objective medical evidence can be a factor in discounting a claimant's

15 subjective complaints, but cannot "form the sole basis." <u>See</u> <u>Burch v.</u>

16 <u>Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005); <u>Rollins v. Massanari</u>, 261

17 F.3d 853, 857 (9th Cir. 2001).  To the extent the ALJ stated other

18 reasons for rejecting Plaintiff's testimony, as discussed above, those

19 other stated reasons are infirm.  Thus, the ALJ's reliance on any

20 alleged inconsistency between Plaintiff's subjective complaints and

21 the objective medical evidence cannot properly support the ALJ's

22 decision.  <u>See</u> <u>id.</u>

23

24      Even if the law permitted an ALJ to rely solely on

25 inconsistencies between a claimant's subjective complaints and the

26 objective medical evidence, the ALJ's reasoning in the present case

27 would still be deficient.  As summarized above, the medical record

28 includes diagnoses and examination findings consistent, rather than

1  inconsistent, with Plaintiff's subjective complaints.  Diagnoses

2  include cervical and lumbar strain, degenerative disc disease, overuse

3  syndrome and tendinitis of both hands and wrists, bilateral carpal

4  tunnel syndrome (left greater than right), asthma, shortness of

5  breath, chest tightness and rhonchi.  Examination findings include

6  significant pain and limited range of motion, as well as positive test

7  results on straight leg raising and carpal tunnel testing.  Thus,

8  Plaintiff's subjective complaints are not necessarily inconsistent

9  with the objective medical evidence.[6]

10

11       The Court is unable to conclude that the ALJ's failure to state

12  legally sufficient reasons for discounting Plaintiff's subjective

13  complaints was harmless.  "[A]n ALJ's error is harmless where it is

14  inconsequential to the ultimate non-disability determination."  Molina

15  v. Astrue, 674 F.3d at 1115 (citations and quotations omitted).  Here,

16  the vocational expert did testify that a person limited to light work

17  with occasional use of the hands and limited neck motion could perform

18  Plaintiff's past relevant work as a soils engineer (A.R. 104-05; see

19  also DOT 024.161-010, Engineer, Soils, 1991 WL 646509 (4th Ed. R.

20  1991) (listing job requirements)).  However, the vocational expert

21  also testified that, if Plaintiff were limited to sedentary work,

22  there would be no skills transferrable to sedentary work and no jobs

23  ///

24

25       [6]    To the extent Defendant may suggest additional reasons
26  not expressly specified by the ALJ for discounting Plaintiff's
   subjective complaints, the Court may not rely on any such
27  reasons.  See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir.
   2001) (the court "cannot affirm the decision of an agency on a
28  ground that the agency did not invoke in making its decision").

Plaintiff could perform (A.R. 106).[7]  There is no substantial evidence in the record that a person as limited as Plaintiff claims to be could perform any job.

**III. Remand is Appropriate.**

Because the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors, remand is appropriate.  See McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Leon v. Berryhill, 880 F.3d 1041, 1044 (9th Cir. 2017) (reversal with a directive for the immediate calculation of benefits is a "rare and prophylactic exception to the well-established ordinary remand rule"); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.), cert. denied, 531

---

[7]     A person of "advanced age" (i.e., over age 55) who is limited to sedentary work, and who has a high school education with no transferrable skills, is conclusively presumed to be disabled under the Medical Vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the Grids").  See Grid Rule 201.06; see also Cooper v. Sullivan, 880 F.2d 1152, 1157 (9th Cir. 1989) (a conclusion of disability, directed by the Grids, is irrebutable). Plaintiff is of "advanced age" (A.R. 231).

U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record"); Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("Connett") (remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony); but see Orn v. Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (citing Connett for the proposition that "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony, we remand for a calculation of benefits") (quotations omitted); see also Brown-Hunter v. Colvin, 806 F.3d 487, 495-96 (9th Cir. 2015) (discussing the narrow circumstances in which a court will order a benefits calculation rather than further proceedings); Ghanim v. Colvin, 763 F.3d 1154, 1166 (9th Cir. 2014) (remanding for further proceedings where the ALJ failed to state sufficient reasons for deeming a claimant's testimony not credible); Vasquez v. Astrue, 572 F.3d 586, 600-01 (9th Cir. 2009) (a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made).  There are outstanding issues that must be resolved before a proper disability determination can be made in the present case.

///

///

///

///

///

1                                 **CONCLUSION**

2

3       For all of the foregoing reasons,[8] Plaintiff's and Defendant's

4 motions for summary judgment are denied and this matter is remanded

5 for further administrative action consistent with this Opinion.

6

7       LET JUDGMENT BE ENTERED ACCORDINGLY.

8

9         DATED: April 13, 2021.

10

11                                          /S/

12                                    CHARLES F. EICK
                          UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26 _____

27      [8]    The Court has not reached any other issue raised by
Plaintiff except insofar as to determine that reversal with a

28 directive for the immediate payment of benefits would not be
appropriate at this time.